FILED

2005 Jul-07  PM 05:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| DEBRA K. LIPSITZ, | ) | |
| PLAINTIFF, | ) | |
| V. | ) | 2:04-CV-0761-JHH |
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA, | ) | |
| | ) | |
| DEFENDANT. | | |

## MEMORANDUM OF DECISION AND ORDER

The court has before it the March 28, 2005 motion for summary judgment of defendant Board of Trustees of the University of Alabama (hereafter "UAB"). Pursuant to the court's March 28, 2005 order, the motion was deemed submitted, without oral argument, on April 25, 2005.

### I. Procedural History

Plaintiff Debra Lipsitz, a white female formerly employed by defendant, commenced this action on April 14, 2004 by filing a complaint in this court alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967 and the Alabama Age Discrimination in Employment Act.  The court's May 26,

2004 and June 1, 2004 orders dismissed the federal and state age discrimination claims leaving only plaintiff's Title VII gender discrimination (Count Three) and retaliation (Count Four) claims.

Both parties have filed briefs and submitted evidence in support of their respective positions. Defendant filed a brief in support of its motion on March 15, 2005. Defendant submitted evidence[1] in support of its motion for summary judgment on March 28, 2005. On April 25, 2005, plaintiff filed a brief and evidence[2] in opposition to defendant's motion for summary judgment.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229

---

[1] Defendant submitted: deposition of Debra Lipsitz; deposition of Catherine Newhouse with exhibits; deposition of Denise Graham with exhibits; deposition of Helen Matthews with exhibits; deposition of Phyllis Warren with exhibits; deposition of Kimberly Street; deposition of Barbara White with exhibits; defendant's answers and supplemental answers to interrogatories; affidavit of Colleen Steichen; affidavit of Mike Swain; affidavit of Gayle Benson; affidavit of Craig Rogers; affidavit of Vicki Jeffery; affidavit of Jewell Dickson; deposition of Jackie Underwood with exhibits; deposition of Susan McWilliams with exhibits and deposition of Chris Smith.

[2] Plaintiff submitted: affidavit of Debra Lipsitz.

F.3d 1012, 1023 (11th Cir. 2000)  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249.  The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick,

2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991) (<u>en</u> <u>banc</u>)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  <u>Fitzpatrick</u>, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a

simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Evaluation of Plaintiff's Claims

In this action, plaintiff is pursuing claims under Title VII. More specifically, plaintiff claims that defendant (1) intentionally discriminated against her because she is a female and (2) retaliated against her after she complained about defendant's practice. She filed an EEOC charge on May 9, 2003 generally averring disparate treatment and a charge on October 14, 2003 describing retaliation. Plaintiff received a notice of right to sue on both charges on

5

January 16, 2004.  The undisputed facts relevant to her theories of recovery are

stated below and if the facts are in dispute, they are stated in the manner most

favorable to plaintiff, as she is the non-moving party.[3]

### 1.  Disparate Treatment

At the outset, the court notes that even at this late date in the proceedings

plaintiff has expressed uncertainty which employment action comprises her

disparate treatment claim (Count Three).  In moving for summary judgment,

defendant characterized plaintiff's claim as being about the elimination of

plaintiff's position and defendant's failure to rehire plaintiff.  (See Def.'s Brief at

1.)  On the other hand, plaintiff's response brief sharply criticizes defendant's

---

[3]  Defendant's April 25, 2005 motion to strike portions of plaintiff's April 18, 2005
affidavit [Doc. # 42-1] and plaintiff's April 25, 2005 motion to amend/correct affidavit of Debra
K. Lipsitz [Doc. # 44-1] are **DENIED**.

The court also has before it plaintiff's April 27, 2005 motions to strike (1) the affidavits
of Jewell Dickson and Vickie Jeffrey [Doc. # 45-1], (2) portions of the affidavit of Mike Swain
[Doc. # 46-1], (3) portions of the affidavit of Colleen Steichen [Doc. # 47-1], (4) portions of the
affidavit of Gayle Benson [Doc. # 48-1] and (5) portions of the affidavit of Craig Rogers [Doc. #
49-1].
Plaintiff's objections to the affidavits of Mike Swain, Colleen Steichen, Gayle Benson
and Craig Rogers are not well taken and these motions are hereby **DENIED**.  Although plaintiff
makes similar objections to the affidavits of Jewell Dickson and Vickie Jeffery, plaintiff also
asserts that these two individuals were not disclosed by defendant in its July 27, 2004 initial
disclosure or its January 24, 2005 supplemental disclosure.  The Federal Rules of Civil Procedure
mandate that undisclosed witnesses cannot be used to support a motion.  As such, plaintiff's
motion to strike  the affidavits of Jewell Dickson and Vickie Jeffery [Doc. # 45-1] is hereby
**GRANTED**.  Pursuant to the rulings made in this memorandum of decision and accompanying
order, plaintiff's request for a protective order to prevent further mention of Jewell Dickson and
Vickie Jeffery [Doc. # 45-1] and plaintiff's motion to strike defendant's witness list [Doc. # 59-
1] are **DENIED** as **MOOT**.

characterization and argues that plaintiff was not legitimately selected for

termination as a part of a reduction in force ("RIF"), and emphasizes that the

failure to hire analysis is inapplicable in this case.  (See Pl.'s Response Brief at 3.)

Plaintiff herself has expressed uncertainty regarding the nature of her lawsuit:

> Q:    Your lawsuit says that [defendant] terminated you because of
>        your sex, female.  Why do you say that, since you just told me
>        that the decision was made by a female?
>
> A:    I still – I don't really understand your question.
>
> Q:    I don't know how I can make it any clearer.  Do you think that
>        your job was eliminated because you are a woman?
>
> A:    My position was downsized is what I was told.
>
> Q:    Okay, do you believe that?
>
> ...
>
> A:    That's what I was told.
>
> Q:    Okay, my understanding of your lawsuit is that you were
>        saying that that is not the real reason, but rather you were really
>        terminated because of your sex, female.  Is that what you are
>        saying in your lawsuit?
>
> A:    I'm going to defer to my attorney on that one.
>
> Q:    Okay, I'm entitled to ask you your testimony about that.  And
>        the follow-up question to that is simply why do you think that?
>        If you think that.  If you don't, tell me.
>
> Plaintiff's Counsel:              You can look at the lawsuit. ... And
>                                          your charge that was filed in this.
>
> Defendant's Counsel:     For the record, your lawyer is referring you
>                                          to the allegations in the lawsuit.
>
> A:    Okay, according to this, it says I was discriminated against on
>        the basis of my age and gender.
>
> Q:    Yes, is this what you think?
>
> A:    Yes.
>
> Q:    Why do you think that?
>
> A:    Because I was – let's see – what am I now –

Q:      I'm sorry to interrupt you.  The Judge has dismissed the age
        discrimination claim.  So I think, you know, in the interest of
        time, just address why you think it was because of gender.
A:      Well, I was dismissed because my position was downsized and
        a new male Occupational Therapist took the position.

(See Lipsitz Depo. at 159-62.)[4]  While plaintiff's presentation is not the model of

clarity, Count Three of the complaint mentions (1) termination and (2) a male

being hired.  As both of these events occurred within 180 days of plaintiff's

May 9, 2003 EEOC charge, plaintiff has arguably plead both a RIF termination

claim and a failure to hire claim.[5]

Plaintiff is a veteran occupational therapist who worked in defendant's

Spain Rehabilitation Center from January 6, 1992 until November 15, 2002. From

1998 until 2002, plaintiff reported to Denise Graham, the manager of occupational

therapy, who reported to Cathy Newhouse, Director of Rehabilitation Services.

In 1999, plaintiff's job title was changed from Senior Occupational

Therapist to Occupational Therapy Clinical Specialist.  The Clinical Specialist role

---

[4]  The undisputed facts indicate that plaintiff was terminated due to a reduction in force
and then a few months later another job became available that plaintiff desired, which was filled
by a male.

[5]  The Eleventh Circuit has been presented with a situation where it was difficult to
ascertain whether a plaintiff presented a reduction in force claim or a failure to hire claim.  See
Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068 (11th Cir. 1995).  In Coutu, the
court listed the prima facie elements of both types of claims together, assumed that the evidence
supported the prima facie elements and affirmed the district court's holding that defendant's
articulated non-discriminatory reason for the termination and failure to rehire plaintiff.  47 F.3d
at 1073.  This court will similarly analyze plaintiff's claims.

was more advanced than her previous position which entitled plaintiff to a two percent pay raise.

On June 14, 2002, plaintiff met with Denise Graham, Gayle Benson and Cathy Newhouse to discuss ongoing issues with plaintiff's work performance. Among several topics of discussion, the supervisors addressed plaintiff's habit of spending time at work handling personal issues.  (See Lipsitz Depo. at 118-19). Plaintiff was also informed that she was going to be moved to the acute care area and that she needed to be successful working with the staff in that area.  (See id. at 121.)

An evaluation made in August 2002 reflected that plaintiff "frequently exceeds [the] standard level of performance."  (See Graham Depo. at 53-54).  On October 1, 2002, plaintiff's job title was changed to PT/OT clinical therapist.  In her new position, plaintiff maintained a registered occupational therapist patient load but undertook some additional administrative duties.  (See Newhouse Depo. at 33-37.)  Despite her favorable evaluation and promotion, plaintiff received a written counseling regarding an inadequate splint application on October 17, 2002.  (See Lipsitz Depo. at 101.)  Four days later on October 21, 2002, plaintiff received another written counseling, this time for failing to uphold the UAB

hospitality standard.  (See id. at 97.)  Plaintiff responded in writing to both counselings.

In September 2002, UAB's executive management council met to discuss the possibility of downsizing for budgetary reasons.  (See White Depo. at 104). The council set December 7, 2002 as the deadline for completing the reductions in force.  (See id.)  Cathy Newhouse was responsible for selecting who would be downsized from her area.  (See Newhouse Depo. at 20.)  In making this decision, Newhouse was instructed to "make the decision that was going to be the least detrimental to the patient care [provided] in [her] division of rehab services."  (See id. at 40.)  Plaintiff was selected for termination in October 2002.  (See id. at 43.) Newhouse reasoned that when plaintiff was moved to the acute care division, plaintiff was not replacing anyone, but instead, plaintiff was an "additional resource."  (See id. at 42-43.)  Newhouse believed that plaintiff's termination would result in the least noticeable adverse affect on patient care.  (See id.)

On November 14, 2002, Newhouse and Barbara White, director of human resources, informed plaintiff that her position was being downsized "because of the need to reduce positions within the hospital" and "our need to reduce costs." (See Lipsitz Depo. at 34.)  The PT/OT clinical therapist position that plaintiff

occupied ceased to exist when she was terminated.  (See id. at 163.)[6]  In all, ten

employees were part of defendant's reduction in force in November/December

2002.  (See White Depo. at 28; Graham Depo. at 24.)

     Plaintiff received three months severance pay and a letter of

recommendation stating inter alia that "Debbie set the gold standard for

documentation in the Occupational Therapy department," "Debbie is very much a

perfectionist and makes a commitment to work to the best of her ability," and

"[plaintiff] is a loyal and committed employee."  (See id. at 35-36, Ex. 4.)[7]

Plaintiff worked with Barbara White to attempt to find other employment within

UAB.  Plaintiff also met with Susan McWilliams, associate vice-president for

Human Resource Management, and Mike Matthews, an employment

representative, to discuss possible referral to other jobs.

     An occupational therapist position, which is the subject of one gravamen of

this lawsuit, became available in February 2003.  The position became vacant

when two full-time employees went part-time.  (See Newhouse Depo. at 22, 55.)

Newhouse instructed human resources to publicly post the position when she

---

[6]  After plaintiff's termination, Graham took on some of plaintiff's record keeping
activities and several other of plaintiff's responsibilities went undone.  (See Graham Depo. at 25;
Newhouse Depo. at 86-96.)

[7]  Defendant argues that the letter of recommendation focused on plaintiff's
documentation skills as opposed to her patient care abilities.

became certain that the position would be coming available.  The position was posted on February 3, 2003.  Plaintiff did not submit an application for this position because she believed she had a standing application on file for transfer opportunities.  (See Lipsitz Depo. at 57-61.)[8]

Chris Smith, a male, filled the position on February 12, 2003.  (See White Depo. at 60.)  Smith was initially hired in 2000 while he was a student and worked for two and half years on an as needed basis.  (See Graham Depo. at 21-22.)  In December 2002, Graham informally asked Smith if he would be interested in an occupational therapist position that was probably going to become available in early 2003.  (See Smith Depo. at 19, 23.)  Smith expressed interest, and soon thereafter, he began substitute full-time work in the rehab department.  (See id.)[9] Smith was not interviewed for the available occupational therapist position, but was formally offered the job in late January 2003.  (See Graham Depo. at 22.) Newhouse and Graham did not consider plaintiff for the position because she did not apply, but even if she had, Newhouse expressed her doubts that plaintiff would

---

[8] Displaced employees were not given formal priority in being rehired to another positions.  (See White Depo. at 46.)  For six months following termination, employees are put on a "displaced employee" list and someone from human resources is made available to help them find employment.  (See id. at 47-49.)  White worked in this role with plaintiff.  (See id. at 49.)

[9] Plaintiff was working in the acute care department at the time she was terminated.  (See Graham Depo. at 22.)

have been hired since management believed that plaintiff was not a good "strategic fit" for that department based on her past performance.  (See Newhouse Depo. at 44.)

Under Title VII, it is unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals's ... sex ...."  42 U.S.C. § 2000e-2(a)(1).  To challenge plaintiff's termination, since it was a result of a reduction in force where she was not replaced, plaintiff must show (1) that she is a member of a protected class, (2) that she was terminated, (3) that she was qualified for her current position or to assume another position at the time of discharge; and (4) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of gender in reaching the decision at issue.  Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1457 (11th Cir. 1997); Earley v. Champion Int'l. Corp., 907 F.2d 1077, 1082 (11th Cir. 1990).

In a case alleging discriminatory failure to hire based on circumstantial evidence, the court uses the now-familiar framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450

U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)."  Under the McDonnell

Douglas and Burdine framework, plaintiff first has the burden of establishing a

prima facie case of discrimination, which creates a rebuttable presumption that the

employer acted illegally.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1527-

28 (11th Cir. 1997).  A plaintiff establishes a prima facie case for a failure to hire

by showing that he or she was a qualified member of a protected class that applied

for a job and was rejected despite her qualifications and the position remained

open or was filled by a person outside the protected class.  Coutu v. Martin County

Bd. of County Comm'rs, 47 F.3d 1068, 1073 (11th Cir. 1995).

It is unlikely that a reasonable juror could conclude that plaintiff established

a prima facie case under either a RIF termination theory or a failure to hire theory.

All inferences that can be reasonably drawn from the record indicate that

defendant was reducing its work force for budget reasons.  Moreover, no evidence

supports the contention that plaintiff was selected for termination on the basis of

her gender.  As to the failure to hire claim, plaintiff concedes that she did not

apply for the occupational therapist position. (See Pl.'s Response Brief at 13.)

Thus, plaintiff would have to be in the narrow class of nonapplicants entitled to

relief in order to establish a prima facie failure to hire claim.

Although Title VII's express language covers "applicants" for employment, 42 U.S.C. § 2000e-2(a)(2), (c)(2), the Supreme Court has indicated that nonapplicants are entitled to relief under Title VII if they can satisfy the "not always easy burden of proving that [they] would have applied" but for the discriminatory practice.  See Teamsters v. United States, 431 U.S. 324, 367 (1977).  The Eleventh Circuit recently added:

> An employee who has not applied for a job opening can still establish a prima facie case of discrimination in two circumstances.  First, 'nonapplicants may be entitled to relief where the employer's clear policy of exclusion would make an application a useless exercise,' which requires a two-part showing: (1) '[the nonapplicant] would have applied but for discrimination'; and (2) '[the nonapplicant] would have been discriminatorily rejected had he applied.'  Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1560 (11th Cir.1986).  Second, when no policy of exclusion or formal notice of a job exist, an employer 'has a duty to consider all those who might reasonably be interested,' so a prima facie case will be established when the employee shows that "the company had some reason or duty to consider him for the post." Id.

Barron v. Fed. Reserve Bank of Atlanta, 2005 WL 901906, at *2 (11th Cir. 2005) (unpublished).  Plaintiff argues that the second circumstance is applicable in the instant case because the termination letter stated in pertinent part: "... Representatives from Human Resources will meet with you immediately to discuss all applicable compensation and benefits related to this action.  In addition, information on open UAB positions, for which you qualify, will be available and

interviews will be arranged as appropriate." Plaintiff also points the court to defendant's policy of helping former employees find employment for 180 days after their severance pay ends. (See McWilliams Depo. at 29-30, 58.) Although defendant aids former employees in finding employment, it is the responsibility of former employees to apply for open positions. (See id. at 40-41.) After a person completes an application, defendant's human resources department electronically scans the application and keeps it on file to avoid the inconvenience of having an individual complete an application multiple times. (See id. at 56.) Human resources only submits the application after an individual contacts them to specifically request that their application be forwarded to the department with the available job. (See id.)

Plaintiff argues that this assistance should be construed as conferring a duty on defendant to consider all individuals that have recently sought employment for any and all positions that they may be eligible. The court disagrees. Such an arrangement would be impossible to administer, but more importantly, most potential applicants would want to carefully consider the details of each job position before applying. The Eleventh Circuit has stated that "general interest in being rehired without submitting an application is not enough to establish a prima facie case of ... discrimination when the defendant-employer has publicized an

16

open position.  <u>Smith v. J. Smith Lanier & Co.</u>, 352 F.3d 1342, 1345 (11th Cir. 2003). <u>Cf.</u> <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 1133 (11th Cir. 1984) (analyzing a similar argument and coming to opposite conclusion where there was no formal notice of job availability).  The occupational therapist position was posted on defendant's employment website for at least five days before it was filled.  Plaintiff had a newspaper clipping regarding the position, yet for whatever reason she never asked human resources to submit her application for the position.  The court can find no facts that would impose a duty on defendant to consider plaintiff simply because she expressed general interest in the occupational therapist position.[10]

Although plaintiff probably cannot establish a prima facie RIF termination or failure to hire claim, the court need not resolve Count III on these grounds.  Assuming <u>arguendo</u> that such a showing could be made, a presumption of discrimination would arise and the burden of production would shift to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  <u>See</u>

_____

[10]  In <u>Smith</u>, the Eleventh Circuit came to the conclusion that the employer did not have a duty to consider all qualified individuals who had not applied to the job.  352 F.3d at 1345.  The court reached that conclusion after contrasting <u>Binder v. Long Island Lighting Co.</u>, 57 F.3d 193 (2d Cir. 1995).  <u>See</u> <u>id.</u> n.1.  In <u>Binder</u>, the Second Circuit found the plaintiff's prima facie elements fulfilled because the evidence indicated that the vice president of human resources suggested to the employee that he need not apply for positions.  <u>Binder</u>, 57 F.3d at 200-01.  Unlike <u>Binder</u>, and similar to <u>Smith</u>, defendant has made no such representations beyond the innocuous language found in plaintiff's termination letter.

Combs, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons."  Burdine, 450 U.S. at 254-55.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[11]  Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, evidence of pretext may include the same evidence offered to establish the prima facie case.  See Combs, 106 F.3d at 1528.  Despite the burden of production shifting between plaintiff and defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Burdine, 450 U.S. at 253.  Given that the ultimate burden of persuasion always lies with the employee, plaintiff may defeat summary judgment either by proving that intentional discrimination motivated defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus

---

[11] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  Chapman, 229 F.3d at 1030.

permitting but not compelling the trier of fact to make a finding of illegal

discrimination.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,

146-49, 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of

evidence by plaintiff will not always prevent the employer from prevailing on a

Rule 50 motion and suggesting that the strength of plaintiff's prima facie case,

whether the probative value of the proof that the employer's explanation is false,

and any other properly considered evidence that supports the employer's case are

among other factors to take into account in evaluating a Rule 50 motion);[12] St.

Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d

1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336

(11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-

Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th

Cir. 1993).

In this case, defendant articulated a legitimate, non-discriminatory reason

for plaintiff's termination: due to budgetary constraints, defendant decided to

eliminate positions that would have a minimal impact on patient care.  Plaintiff has

not come forward with evidence from which a reasonable juror could question

---

[12] The court in Chapman modified the statement in Combs contrary to this holding in
Reeves after noting that the standard for granting summary judgment mirrors the standard for
judgment as a matter of law.  See Chapman, 229 F.3d at 1025, n.11.

defendant's explanation that plaintiff's position was legitimately selected for downsizing.

Likewise, defendant has articulated a legitimate, non-discriminatory reason for its failure to hire plaintiff to the occupational therapist position: that plaintiff did not apply.  However, assuming that plaintiff has overcome her failure to apply as a part of her prima facie showing, defendant states that plaintiff's poor working relationship with her co-workers, patients and students during her previous employment rendered her qualification for the position questionable.  Plaintiff's history of reprimands are consistent with this reason.  Between August 1994 and May 1996, plaintiff received seven counselings and one formal complaint. Plaintiff's disciplinary issues led to a ninety day probation effective February 21, 1997.  (See Lipsitz Depo. at 136.)  On June 28, 2000, plaintiff received a verbal counseling for making unauthorized changes in patient schedules.  (See id. at 128-29.)  On July 2, 2001, plaintiff received a verbal counseling regarding poor interpersonal skills with her co-workers and patients.  That same day plaintiff completed a form entitled "Areas for Remediation for Debbie Lipsitz" where she was rated zero out of four for promoting team spirit or a sense of humor, genuine respect for one another, consistent willingness to cooperate and assist others, and a positive attitude.  Plaintiff was also rated zero out of four for interacting with

others by giving positive feedback, using constructive criticism, and dealing with conflict in a positive manner.  Plaintiff was rated one out of four in all other categories.  The evidence is lengthy and undisputed that plaintiff did not get along well with many of her co-workers while working at UAB and fully supports defendant's legitimate non-discriminatory reasons for not rehiring plaintiff.  More importantly, plaintiff has not come forward with anything more than conclusory allegations to rebut defendant's reasons.  As such, the facts cannot be construed in a manner that would prevent defendant from being entitled to judgment as a matter of law if Count Three were allowed to continue to trial.

*2.  Retaliation*

Plaintiff claims that defendant retaliated against her for complaining of gender discrimination when defendant declined to hire her for various positions that she applied for within UAB.  (See Compl., Count Four.)  It is rudimentary that under Title VII, it "shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this [title], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]."  42 U.S.C. § 2000e-3(a).  Likewise, it is well established that retaliation is a separate violation under

21

Title VII.  See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 586 (11th Cir. 2000).

Thus, "plaintiff 'need not prove the underlying claim of discrimination which led

to her protest,' so long as she had a reasonable good faith belief that the

discrimination existed." Meeks v. Assoc. Int'l, 15 F.3d 1013, 1021 (11th Cir.

1994) (quoting Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1492,

1494 (11th Cir. 1989)).  Therefore, even where a plaintiff has failed to make a

prima facie showing of discrimination (or present evidence of discriminatory

treatment), she may still have a valid claim for retaliation.

        In order to establish a prima facie case of retaliation, the plaintiff must

show: (1) that she engaged in protected activity; (2) that she suffered an adverse

employment action and (3) that there is a causal relationship between the protected

activity and the adverse employment action.  See EEOC v. Reichhold Chems.,

Inc., 988 F.2d 1564, 1571 (11th Cir. 1993); see also Maniccia v. Brown, 171 F.3d

1364, 1369 (11th Cir. 1999).  Plaintiff engaged in statutorily protected expression

when she filed her initial charge of discrimination with the EEOC on May 9, 2003

and filed this lawsuit on April 14, 2004.  The failure to hire plaintiff was an

adverse employment action.  Gupta, 212 F.3d at 587.  The third element is whether

there is a causal link exists between plaintiff's protected activity and the decision

not to hire her.  Plaintiff argues that retaliation need not be the only basis for the

employer's decision, as long as it is a significant factor in the employment decision. Given the standard of causation, and the possibility for mixed motives, plaintiff argues that whether defendant retaliated against plaintiff is an issue within the province of the jury.

Plaintiff applied, and was interviewed for, several positions within UAB following her termination. Plaintiff's retaliation claim is based only upon her unsuccessful application for a part-time occupational therapy position in the Mary Lewis Skilled Nursing Facility that she applied for in July 2004.[13] Plaintiff had two meetings as a part of her interview. (See Lipsitz Depo. at 38.) The first was with Helen Matthews, Kimberly Street and Phyllis Warren, who where staff members in the skilled nursing facility. (See id.) The second meeting was with Cathy Newhouse. (See id.) Matthews, Street and Warren unanimously recommended not to hire plaintiff. (See Warren Depo. at 32-37; Matthews Depo. at 30-35, 40; Street Depo. at 37-38)[14] Matthews, Street and Warren completed

---

[13] Plaintiff also unsuccessfully sought employment in the Constraint-Induced Therapy department and the Low Vision area of the School of Optometry; however, these positions are not relevant to plaintiff's claim because she was not hired for these positions before filing her EEOC charge.

[14] Matthews did not recommend plaintiff for hire because she did not project a professional image, did not have extensive experience in skilled nursing and did not believe that she was a good fit for the department. (See Matthews Depo. at 43.) Street made the decision because she did not believe plaintiff would work well with her team. (See Street Depo. at 29.) Warren did not think plaintiff had enough subacute long-term care skills and thought plaintiff

interview forms and unanimously recommended not to hire plaintiff.  (See Matthews Depo. at 39-40.)  The forms were given to Newhouse who made the final decision.  (See Matthews Depo. at 53.)   Matthews, Street and Warren were unaware that plaintiff filed an EEOC charge or lawsuit at this time.  (See Matthews Depo. at 48, Street Depo. at 37; Warren Depo. at 56.)   Newhouse was aware of plaintiff's EEOC charge and lawsuit before plaintiff's interview.

To prove the causal relation element, "a plaintiff merely has to prove that the protected activity and the negative employment action are not wholly unrelated."  Olmstead v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998); EEOC v. Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993), Bigge v. Albertsons, Inc., 894 F.2d 1497, 1501 (11th Cir.1990).  At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action.  Goldsmith, 996 F.2d at 1163.  Thus, a "close temporal proximity" between plaintiff's protected conduct and an adverse employment action generally is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case.  See Olmstead, 141 F.3d at 1460.  On the other hand, the Eleventh Circuit has indicated that a substantial delay between the protected activity and the adverse

was not a team player.  (See Warren Depo. at 32; 62.)

employment action and the absence of other evidence tending to show causation may justify judgment as a matter of law for the employer.  See Wascura v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir. 2001); Maniccia, 171 F.3d at 1370. Moreover, the Supreme Court has warned that "mere temporal proximity between an employer's knowledge of a protected activity and an adverse employment action ... must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (internal citation and quotation marks omitted).

Plaintiff's retaliation claim is premised almost exclusively on the fact that Newhouse had knowledge of plaintiff's EEOC charge and complaint at the time she decided not to hire plaintiff for the skilled nursing position.  While this meets plaintiff's threshold requirement that the employer was aware of the protected activity, generally, it is not enough alone to infer a causal connection.  In such a situation, the court looks to other evidence to evaluate whether the requisite causation is present.  For example, although Newhouse had the final decision making authority, the other interviewers were unaware of any of plaintiff's protected activity.  These untainted interviewers unanimously recommended not to hire plaintiff.

Additionally, defendant argues that plaintiff filed her EEOC charge on May 9, 2003 and the decision not to hire plaintiff was not made until July 2004.

25

As plaintiff points out, Title VII's language states that any participation in the proceeding, which includes filing a legal complaint on April 14, 2004, is the relevant protected activity for determining temporal proximity.  Approximately three months elapsed between the adverse employment action and the filing of plaintiff's complaint.  The Eleventh Circuit recently held that "[b]y itself, the three month period does not allow a reasonable inference of a causal relation between the protected expression and the adverse action."  Higdon v. Jackson, 393 F.3d 1211, 1220-21 (11th Cir. 2004).  In arriving at this conclusion, the Higdon court noted that the Supreme Court approved of two decisions holding that a three and four month disparity was insufficient to show a causal connection.  393 F.3d at 1220-21 (referencing Richmond v. ONEOK, 120 F.3d 205, 209 (10th Cir.1997) (3-month period insufficient) and Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month period insufficient)); see also Wascura, 257 F.3d at 1248 (4-month period insufficient).  While the time between plaintiff's complaint and the adverse employment action would not alone be enough to maintain a claim, the amount of time elapsed between Newhouse's knowledge of plaintiff's complaint and the decision not to hire plaintiff is the more instructive sequence for the court's analysis.  Since no evidence has been presented as to this fact, the court must err on the side of plaintiff, as the non-movant, and assume that plaintiff

26

would be able to establish the causal connection element and a prima facie claim of retaliation.

However, the analysis does not end there.  Burden of proof in Title VII retaliation claims are governed by the framework established in <u>McDonnell Douglas</u>.  <u>See</u> <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1162-63 (11th Cir. 1993).  Once plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  <u>See</u> <u>St. Mary's Honor Cntr. v. Hicks</u>, 509 U.S. 502, 507 (1993). Defendant states that plaintiff was not hired because the interviewers unanimously recommended not to hire plaintiff, plaintiff cried in her interview with Newhouse, plaintiff did not have significant experience in a skilled nursing facility and plaintiff's interview was not as impressive as other candidates.  (<u>See</u> Def.'s Brief at 16.)  Hence, the burden shifts back to plaintiff to show that a reasonable trier of fact would be able to find that defendant's articulated legitimate, non-discriminatory reasons for the adverse employment action were pretextual.  <u>See</u> <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1543 (11th Cir. 1997).  In other words, plaintiff will succeed in creating an inference of discrimination only if he discredits defendant's proffered legitimate reasons by showing: (1) that the proffered reason had no basis in fact; (2) that the proffered reason did not actually

27

motivate the employment decision or (3) that the proffered reason was insufficient to motivate the employment decision.  See Robertson v. The Home Depot (U.S.A.), Inc., 976 F.Supp 1467, 1475 (S.D. Fla. 1997) (citing Walker v. NationsBank of Fla., N.A., 53 F.3d 1548, 1564 (11th Cir. 1995) (Johnson, J., concurring)).  Moreover, plaintiff must rebut each of the defendant's articulated reasons.  See Chapman, 229 F.3d at 1024-25.

The lengthy evidentiary submissions reveal that plaintiff cannot rebut each of defendant's reasons.  Other than defendant's criticism of plaintiff's experience, which was probably superior to the individual ultimately hired, nothing in the record indicates that Newhouse should have hired plaintiff.  Matthews, Street and Warren were unaware of plaintiff's protected expression, yet they unanimously recommended that Newhouse not hire plaintiff.  Moreover, the undisputed evidence supports each of the interview participants' unimpressive evaluations of plaintiff's interview.  It is not the role of the court to substitute its own judgment for that of the individuals working in the nursing facility who were familiar with the demands of their jobs and had a first-hand opportunity to evaluate whether plaintiff was the best candidate to meet those demands.  These individuals apparently believed that plaintiff was not a good fit for the team setting in which they work, and plaintiff has not argued that they did not honestly entertain this

belief.  In order to prevail on defendant's summary judgement motion, plaintiff must come forward with evidence sufficient for a reasonable jury to conclude that the challenged conduct or decisions were indeed motivated by intentional discrimination or that defendant's proffered legitimate reasons were merely a pretext for illegal discrimination.  Plaintiff has not carried her burden of production because at best she is only quarreling with defendant's articulated reasons, which is not sufficient.  See Chapman, 229 F.3d at 1030.  Therefore, defendant is entitled to summary judgment in its favor as to plaintiff's retaliation claim (Count Four).

## IV.  Conclusion

For the reasons set forth above, the court finds that no material issues of fact remain and that defendant UAB is entitled to judgment as a matter of law as to all claims remaining in this case asserted by plaintiff.  Assuming that the undisputed evidence establishes a prima facie case for termination and failure to hire, plaintiff's claims fail because she has not come forward evidence which a reasonable jury could use to find that defendant's non-discriminatory articulated reasons are pretextual.

A separate order will be entered this day.

**DONE** this the ___7th___ day of July, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE